# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02223-RM-MEH

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION,

      Plaintiff,

v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF THE ARMY;
UNITED STATES FISH AND WILDLIFE SERVICE; and
SHELL OIL COMPANY,

      Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANT SHELL OIL COMPANY'S MOTION TO DISMISS

---

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................2

ARGUMENT .......................................................................................................4

I.   MOTION TO DISMISS STANDARD..............................................................4
     A.  Standard for 12(b)(1) .........................................................................4
     B.  Standard for 12(b)(6) .........................................................................4

II.  JURISDICTION ...........................................................................................4
     A.  The State cedes its claim to diversity jurisdiction over Shell. ...........................4
     B.  This Court has jurisdiction over CDPHE's CERCLA claim because
         it raises a federal question....................................................................5
     C.  This Court has supplemental jurisdiction over CDPHE's CHWA claim. .........5
         1.  Shell does not dispute this Court's supplemental jurisdiction. .........5
         2.  Even if the Court decides CDPHE failed to state a claim
             against Shell on its CERCLA claim, the Court may retain
             supplemental jurisdiction over CDPHE's CHWA claim................6

III. CDPHE'S COMPLAINT SUFFICIENTLY PLEADS ITS CERCLA 121(e)(2)
     CLAIM AS TO SHELL..................................................................................7

IV.  CDPHE'S COMPLAINT SUFFICIENTLY PLEADS THAT SHELL IS A
     CURRENT "OPERATOR" OF THE ROCKY MOUNTAIN ARSENAL ..................8
     A.  "Operator" liability extends to "persons" making decisions about
         compliance with environmental regulations. ..............................................8
     B.  CDPHE's Complaint must survive Shell's 12(b)(6) challenge because it
         alleges Shell is an "Operator" that currently makes environmental
         compliance decisions concerning post-closure activities at the Arsenal. ........10
         1.  CDPHE's Complaint alleges Shell is a current operator of the
             Facility. .....................................................................................10
         2.  The *Friedland* "actual control" test and whether Shell enjoys
             "pervasive control of the site" wrongly limit the analysis at a
             site like the Arsenal which is neither currently operating nor
             closing but is, instead, in post-closure. ............................................10
         3.  Shell's argument that the Complaint alleges Shell "participates
             in" rather than "conducts or controls" ongoing decision-making
             wrongly limits the meaning of operator liability. ..........................11
         4.  Shell's arguments concerning ownership of the Facility are not
             relevant to the analysis...............................................................11

V.     SHELL HAS BEEN A CHWA OPERATOR SINCE IT OPERATED THE ARSENAL – A HAZARDOUS WASTE FACILITY.  BECAUSE SHELL CHOSE TO CLOSE THE ARSENAL WITHOUT FULL CHARACTERIZATION AND WITH WASTE LEFT IN PLACE, IT NOW MUST OBTAIN A POST-CLOSURE PERMIT. ...........................................................................................................12

    A.  CDPHE's Complaint must survive Shell's 12(b)(6) challenge because it alleges Shell was an RCRA/CHWA "operator" liable for closure and post-closure requirements at the Arsenal. ................................................................12

    B.  Shell's arguments regarding its disposal activities in relation to CERCLA are not dispositive of its operator status under CHWA. ..................................13

    C.  Shell's generalizations about CERCLA and RCRA and its cite to *Gwaltney v. Chesapeake Bay* wrongly limit the scope of CHWA operator liability. ...........................................................................................................14

    D.  Shell implies, wrongly, that CHWA did not begin to apply until 1984. Similarly, Shell appears to imply, wrongly, that the 1984 CHWA authorization, which transferred authority from EPA to CDPHE, cut off its RCRA liability and limited CDPHE to pursuing post-1984 CHWA violations. .......................................................................................................15

    E.  Shell's Exhibit shows it is "operating" the Arsenal under CHWA and demonstrates CHWA and CERCLA act together, not separately, at the Arsenal. ............................................................................................................16

VI.   THE CERCLA 121(e)(1) PERMIT WAIVER PROVISION DOES NOT APPLY TO CHWA POST-CLOSURE PERMIT REQUIREMENTS ......................17

    A.  CDPHE has met its pleading burden and Shell makes legal arguments beyond the scope of a Rule 12(b)(6) motion. ...................................................17

    B.  CERCLA 121(e)(1) does not waive the post-closure permit requirement. ......................................................................................................17

Plaintiff, the Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division ("CDPHE"), by and through the Colorado Attorney General's Office, submits the following Brief in Opposition to Defendant Shell Oil Company's ("Shell") Motion to Dismiss.  For the reasons set forth below, CDPHE requests this Court deny the Motion to Dismiss in its entirety.[1]

## INTRODUCTION

The Rocky Mountain Arsenal (the "Facility" or the "Arsenal") consists of the contiguous 27 square mile parcel of property located at 5650 Gateway Road, Commerce City, Adams County, Colorado.  Shell and the Army disposed significant amounts of hazardous waste and hazardous constituents at the Arsenal over many decades.  Rather than characterize the extent of, and remove their contamination from the buffer zone around the manufacturing areas, Shell and the Army saved millions (billions by some estimates) of dollars by conducting a remedy which allowed for minimal characterization, and left known hazardous waste and hazardous constituents onsite.  This remedy is permissible provided that Shell, the Army, and the United States Fish and Wildlife Service ("USFWS," who, together with Army are referred to as the "Federal Defendants") establish and maintain programs to: (1) operate and manage known hazardous waste landfills and the designed and engineered cover systems, (2) monitor and control groundwater, and (3) maintain institutional controls, such as land use restrictions, one of which requires the majority of the Arsenal to remain in federal ownership.  These programs and controls must be subject to a post-closure permit issued by the State of Colorado.  Shell now

---

[1] Because Shell filed its Motion to Dismiss before assignment of District Court Judge Raymond P. Moore, it does not comply with Judge Moore's Practice Standards. Therefore, this Response addresses the arguments as presented in Shell's Motion and complies with Magistrate Judge Michael E. Hegarty's Practice Standards.  Nonetheless, CDPHE believes this Response complies with the substance of Judge Moore's Practice Standards.

seeks to avoid enforcement of the programs and controls that allowed it to avoid Facility-wide characterization and to leave its waste and contamination onsite.

CDPHE brought suit against Shell and the Federal Defendants on two issues: (1) a Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 to 9674 ("CERCLA") claim to enforce the requirement of the Arsenal remedy that Arsenal land (other than parcels specifically identified in law) remain in federal ownership, and (2) a claim to enforce post-closure permitting requirements of the Colorado Hazardous Waste Act, Colo. Rev. Stat. §§ 25-15-301 to 316 ("CHWA" and referred to as "CHWMA" in some historic documents). Shell moved to dismiss both these claims.

The Court should deny Shell's Motion to Dismiss ("MTD") because this Court has subject matter jurisdiction to hear CDPHE's federal claim and its related state law claim, and because CDPHE's Complaint meets its pleading requirements.  Further, Shell's Motion to Dismiss neglects to identify the elements of CDPHE's claims it believes CDPHE failed to plead. Instead, it introduces matters outside the pleadings, including an exhibit which not only highlights areas of factual dispute, but also demonstrates Shell's CHWA operator liability at the Arsenal.  Moreover, Shell bases its Motion, in part, on an affirmative defense that its environmental liability at the Arsenal is limited to CERCLA, ignoring established case law holding the Arsenal is subject to regulation under CHWA.  *See United States v. Colorado,* 990 F.2d 1565, 1569 (10th Cir. 1993), cert. denied 114 S. Ct. 922 (1994).  Finally, Shell bases many of its arguments on a mischaracterization of CDPHE's claims by asserting CDPHE alleges Shell is liable under CHWA solely for past disposal activities, when in reality CDPHE's Complaint alleges Shell's liability is based both upon its current activities and also upon its broader historic site operations and CHWA regulated activities that continue to the present.

3

## ARGUMENT

### I.    MOTION TO DISMISS STANDARD

#### A.  Standard for 12(b)(1).

The party invoking a court's jurisdiction bears the burden of establishing it. *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010). Courts apply a rigorous standard of review when presented with a motion to dismiss for lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992).

#### B.  Standard for 12(b)(6).

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly* at 555. For the purposes of a motion to dismiss, a court must take all the factual allegations in the complaint as true. *Id*.

### II.    JURISDICTION

#### A.  The State cedes its claim to diversity jurisdiction over Shell.

Upon reviewing the authorities cited by Shell and conducting additional research, CDPHE acknowledges that, as an agency of the State, it is not a citizen of Colorado, and that *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1894) indicates the State cannot establish diversity jurisdiction as a "citizen" of Colorado.

**B.  This Court has jurisdiction over CDPHE's CERCLA claim because it raises a federal question.**

CDPHE filed its CERCLA claim against Shell and the Federal Defendants under 42 U.S.C. §§ 9620 and 9621.  Compl. ¶¶ 7, 48-54.  Because this CERCLA claim raises a federal question, this Court's independent subject-matter jurisdiction over Shell related to this claim is mandatory.  42 U.S.C. §§ 9613(b), 9621(e)(2).  *See also* 28 U.S.C. § 1331.

Shell appears to argue that because it should prevail on its 12(b)(6) motion to dismiss CDPHE's CERCLA claim, this Court has no subject matter jurisdiction to hear that claim.  MTD at 5-6.  This confuses the analysis.  This Court has federal question jurisdiction to hear the State's CERCLA claim because CERCLA is a federal law and CERCLA actions must be brought in federal court.  42 U.S.C. §§ 9613(b), 9621(e)(2).  CDPHE addresses Shell's 12(b)(6) motion regarding its CERCLA claim in Section III, below.  Again, this is a separate analysis from whether this Court has subject matter jurisdiction to hear this claim.

**C.  This Court has supplemental jurisdiction over CDPHE's CHWA claim.**

1. <u>Shell does not dispute this Court's supplemental jurisdiction</u>.

Shell does not dispute this Court's supplemental jurisdiction to hear CDPHE's state law CHWA claim.  MTD at 7.  Further, CDPHE's CHWA claim arises from the same case and controversy as its CERCLA claim, as they derive from a common nucleus of operative fact.  *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Thus, supplemental jurisdiction is mandatory.  *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1352 (D. Colo. 1994).

2. Even if the Court decides CDPHE failed to state a claim against Shell on its CERCLA claim, the Court may retain supplemental jurisdiction over CDPHE's CHWA claim.

Even if the Court were to dismiss CDPHE's CERCLA claim as to Shell, it should retain supplemental jurisdiction over Shell on its CHWA claim. A district court has discretion to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006). Although federal courts generally decline to exercise supplemental jurisdiction on state claims after federal claims are dismissed before trial, whether to dismiss or keep state claims is a multifactorial analysis that includes consideration of matters such as judicial economy, convenience, fairness to the litigants, the nature and extent of pretrial proceedings, and any particular circumstances of the case at hand. *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010); *Olcott v. Del. Flood Co.,* 76 F.3d 1538, 1550 (10th Cir. 1996).

Even at this early stage of litigation, it is evident that the *Brooks* factors apply here. Economy, convenience, fairness, and comity would not be achieved if the federal court determined the Federal Defendants' post-closure obligations while a state court determined Shell's post-closure obligations, with both courts drawing from the same site history, operative facts, and applicable law. *See e.g., Gard* at 1355 ("Our judicial system encompasses both state and federal courts. It makes no sense to occupy both with duplicative proceedings."). This Court's jurisdiction over the Federal Defendants makes supplemental jurisdiction more appropriate. *See e.g., 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 420 (E.D.N.Y. 1994) (addressing supplemental jurisdiction under 28 U.S.C. § 1367(c)(2), "because the government is a defendant in this action, this Court will exercise its jurisdiction to hear the state claims against the other defendants"). Moreover, Shell has invoked CERCLA

6

121(e) as an affirmative defense to CDPHE's CHWA claim.  MTD at 17-18.  If the resolution of

a state-law cause of action must necessarily turn on a substantial question of federal law, and if

that federal law in turn creates a private cause of action, then the federal court can retain

jurisdiction.  *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1245 (10th Cir.

2001).

### III.   CDPHE'S COMPLAINT SUFFICIENTLY PLEADS ITS CERCLA 121(e)(2) CLAIM AS TO SHELL

Turning from jurisdictional issues to Shell's 12(b)(6) arguments, Section IV.B of Shell's

Motion appears to argue CDPHE's CERCLA claim fails to state a claim against Shell and should

be dismissed pursuant to 12(b)(6).  MTD at 7.  This argument fails because the Complaint meets

the requirements of Federal Rule of Civil Procedure 8(a)(2).  It contains short and plain

statements of CDPHE's claim that show CDPHE is entitled to relief, gives Shell fair notice of

what the claim is and the grounds upon which it rests, and alleges facts that when proven will

entitle CDPHE to relief.  *Conley* at 48; *Twombly* at 555.  Specifically, the Complaint alleges

Shell is an operator of the Facility that makes environmental compliance decisions concerning

ongoing funding of the remedy and participates in decisions regarding the Facility's compliance

with environmental regulations.  Compl. ¶ 39.  Second, the Complaint alleges Shell allowed

Arsenal property to be transferred out of federal ownership.  Compl. ¶ 52.  Next, the Complaint

alleges the illegal land transfer constituted a violation of the CERCLA Record of Decision

("ROD") and the parties' Federal Facility Agreement by all Defendants, including Shell.  Compl.

¶ 52.

This 12(b)(6) analysis should end here.  However, because Shell appears to suggest that

CERCLA 121(e)(2), 42 U.S.C. § 9621(e)(2) (2006), does not apply in the present case, CDPHE

addresses this argument briefly.  Should the Court decide this legal argument is appropriate at

7

this time, CDPHE requests the opportunity to fully brief this issue before the Court enters a ruling.

CERCLA 121(e)(2) empowers a state to "enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform." 42 U.S.C. § 9621(e)(2) (2006). Because all potentially responsible parties under CERCLA are jointly and severally liable for the waste and the remedial action, 42 U.S.C. § 9607, it is not logical for Shell to suggest CDPHE's enforcement authority in CERCLA 121(e)(2) does not extend to all the parties responsible for leaving waste and contamination in place. Further, Shell is a party to the Federal Facility Agreement and participates in routine decision-making concerning the Arsenal remedy. For these reasons, Shell's argument that it should be dismissed from CDPHE's CERCLA Claim must fail.

## IV. CDPHE'S COMPLAINT SUFFICIENTLY PLEADS THAT SHELL IS A CURRENT "OPERATOR" OF THE ROCKY MOUNTAIN ARSENAL

Shell claims CDPHE's "allegations are legally insufficient to support a claim that Shell must obtain a post-closure permit under CHWA." MTD at 8. This argument fails because CDPHE has met its Federal Rule of Civil Procedure 8(a)(2) pleading requirements by alleging Shell is a "person" that currently makes environmental compliance decisions at the Arsenal, funds ongoing post-closure activities at the Arsenal, and participates in routine decision-making and management at the Arsenal.

### A. "Operator" liability extends to "persons" making decisions about compliance with environmental regulations.

The seminal case on operator liability is *United States v. Bestfoods*, 524 U.S. 51, 66-67 (U.S. 1998). There, the United States Supreme Court provided guidance on how to apply the definition of "operator" within the context of CERCLA, a law with a definition of "operator"

similar to that in CHWA.  42 U.S.C § 9601(20)(A) (defining "operator" as "any person owning or operating such facility").   The *Bestfoods* Court adopted a broad interpretation of "operator," explaining it includes persons who make decisions about compliance with environmental regulations:

> [An operator is] someone who directs the workings of, manages, or conducts the affairs of a facility.  To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct or conduct operations specifically related to pollution, that is, operations having to do with leakage or disposal of hazardous waste, **or decisions about compliance with environmental regulations**.

*Bestfoods* at 66-67 (emphasis added).  A more recent case applies this reasoning in the Tenth Circuit, holding "*Bestfoods* also imposes operator liability on those making decisions about compliance with environmental regulations."  *City of Wichita v. Trs. of the Apco Oil Corp. Liquidating Trust*, 306 F. Supp. 2d 1040, 1055 (D. Kan. 2003) (holding the President of a corporation personally liable as an operator based on the frequency of meetings held to discuss environmental compliance issues and because he was actively involved in deciding matters related to environmental compliance).  Additionally, District Courts in this Circuit have applied *Bestfoods* operator liability to determine RCRA operator liability.  *See e.g. Clean Harbors, Inc. v. CBS Corp.*, 875 F.Supp.2d 1311, FN 56 (D. Kansas 2012) ("[T]he relevant provisions of RCRA and CERCLA are substantially similar and thus *Bestfoods* offers persuasive guidance with respect to interpreting RCRA.")

Operator liability extends to those engaged in "macro-management" activities such as organizing maintenance of the facility and taking responsibility for cleanup of the facility. *United States v. Twp. of Brighton*, 153 F.3d 307, 315-16 (6th Cir. 1998) (plurality opinion).

**B.  CDPHE's Complaint must survive Shell's 12(b)(6) challenge because it alleges Shell is an "Operator" that currently makes environmental compliance decisions concerning post-closure activities at the Arsenal.**

1.  <u>CDPHE's Complaint alleges Shell is a current operator of the Facility.</u>

Shell misconstrues the State's claims, and incorrectly implies CDPHE contends its CHWA liability derives solely from its historic disposal.  *See* MTD at 2, 11.[2]  However, CDPHE's Complaint alleges, in the present tense, that "Shell is an 'operator' of the Facility." Compl. ¶ 39.  Specifically, the Complaint alleges "Shell makes environmental compliance decisions concerning ongoing funding of the remedy."  *Id.*  Additionally, the Complaint alleges Shell "participates in decisions regarding the Facility's compliance with environmental regulations."  *Id.*  Further, the Complaint alleges Shell is a party to the Federal Facility Agreement, which "established a cooperative procedure to assess, select and implement response actions to address the release or threat of release of hazardous substances, pollutants or contaminants at or from the Facility," "memorialized institutional controls" at the Facility, and establishes the dispute resolution process for cleanup and closure of the Facility.  Compl. ¶ 25. These allegations meet CDPHE's burden under Federal Rule of Civil Procedure 8(a)(2) because they represent short and plain statements giving Shell notice of the grounds upon which CDPHE's claim rests.  *Twombly* at 555 (internal citations omitted).

2.  <u>The *Friedland* "actual control" test and whether Shell enjoys "pervasive control of the site" wrongly limit the analysis at a site like the Arsenal which is neither currently operating nor closing but is, instead, in post-closure.</u>

Shell cites *United States v. Friedland*, 173 F.Supp 2d 1077, 1094 n.4 (D. Colo. 2001), to support its argument it is not an operator because it lacks "actual control," explained as "someone actively involved in running the facility, typically on a day-to-day, managerial basis."

---

[2] Shell's citation to Compl. ¶ 39 on p. 11 of its Motion omits the second sentence of that paragraph which clearly alleges Shell is an operator based on its present activities.

MTD at 14. This argument demonstrates the complexity of the facts in this case because, as distinguished from a facility that continues to operate or is currently being cleaned up, at a facility like the Arsenal that is now in post-closure, comparatively little actual happens on a typical day-to-day basis. Applying the *Friedland* "actual control" analysis to a site in post-closure without accounting for the specific facts of what actually occurs daily at the site, or which predisposed the current post-closure requirements of the site, would wrongly limit the *Bestfoods* "operator" analysis.

        3.   <u>Shell's argument that the Complaint alleges Shell "participates in" rather than "conducts or controls" ongoing decision-making wrongly limits the meaning of operator liability</u>.

Shell also suggests that CDPHE failed to state a claim concerning Shell's CHWA operator liability because Shell does not exercise "pervasive control over the Arsenal" and because CDPHE's Complaint alleges Shell "participates in" rather than "conducts or controls" environmental compliance decisions. MTD at 8-9. However, operator liability does not hinge on "pervasive control" and it is possible for multiple entities to share operator liability. *See e.g.*, *United States v. Conservation Chem. Co.*, 733 F.Supp. 1215, 1222 (N.D. Ind. 1989). Here, CDPHE's Complaint alleges Shell is one of several operators of the facility, none of which exercise exclusive control. Rather, Shell and the Federal Defendants cooperatively make environmental compliance decisions at the Arsenal.

        4.   <u>Shell's arguments concerning ownership of the Facility are not relevant to the analysis</u>.

Shell suggests that because it does not own the Facility, it cannot be an "operator." MTD at 8. However, ownership is not a requirement for operator status. Rather, as discussed above, operator status hinges on the making of environmental compliance decisions. *Bestfoods* at 66-67.

**V.    SHELL HAS BEEN A CHWA OPERATOR SINCE IT OPERATED THE
ARSENAL – A HAZARDOUS WASTE FACILITY.  BECAUSE SHELL CHOSE
TO CLOSE THE ARSENAL WITHOUT FULL CHARACTERIZATION AND
WITH WASTE LEFT IN PLACE, IT NOW MUST OBTAIN A POST-CLOSURE
PERMIT.**

Shell was a RCRA operator when it leased and managed portions of the Arsenal at the

inception of RCRA in 1980.  Shell was an operator when it disposed of hazardous waste into

Basin F, when it continued to store hazardous wastes in Basin F until closure, and when the

decisions were made to characterize the Arsenal to a less than unrestricted use standard and to

close the Facility with waste left in place.  As a RCRA operator in Colorado, Shell must comply

with the post-closure requirements of Colorado's authorized program under CHWA, including

the requirement that it obtain a CHWA post-closure permit to cover site-wide corrective action,

groundwater protection, institutional controls, and long-term maintenance of hazardous waste

landfills onsite.

**A.    CDPHE's Complaint must survive Shell's 12(b)(6) challenge because it alleges
Shell was an RCRA/CHWA "operator" liable for closure and post-closure
requirements at the Arsenal.**

CDPHE's Complaint alleges Shell disposed of hazardous waste at the Arsenal in 1981,

Compl. ¶ 15.  It also alleges Shell leased Arsenal property until 1987, that it operated Basin F,

and that it stored, treated and disposed of hazardous waste at other hazardous waste units at the

Facility.  Compl. ¶ 12, 14, 15.  Further, the Complaint alleges Basin F was closed with waste left

in place after 1983, that the remedy allowed for less than the full characterization of the

hazardous waste onsite, and that this triggered post-closure requirements for the Defendants.

Compl. ¶ 30-34.  These allegations meet CDPHE's burden under Federal Rule of Civil

Procedure 8(a)(2) because they represent short and plain statements giving Shell notice of the

grounds upon which CDPHE's claim rests.  *Twombly* at 555 (internal citations omitted).

Although the Court's analysis should end here, because Shell briefed several legal arguments, CDHPE turns from its pleading requirements to these legal arguments, which confuse CERCLA and RCRA/CHWA and introduce matters outside the Complaint.

**B. Shell's arguments regarding its disposal activities in relation to CERCLA are not dispositive of its operator status under CHWA.**

In framing this litigation, Shell states:

Shell's past disposal of waste at the Arsenal is governed by CERCLA, not CHWA, and concluded decades ago, before CHWA was implemented.

MTD at 2. This confuses CERCLA and CHWA liability. Under CERCLA, Shell is an operator because it operated a facility from which there was and continues to be releases of hazardous substances. 42 U.S.C. § 9607(a). However, as CDPHE pleads throughout its Complaint, Shell is also an "operator" under CHWA because it operated and currently operates a hazardous waste management facility. Colo. Rev. Stat. § 25-15-101 to 316 (2017); Compl. ¶¶ 12-16, 39.

Shell's claim that its liabilities and obligations are limited to "CERCLA, not CHWA" is contrary to law. MTD at 2. As described in the Complaint, a U.S. District Court opinion in 1989 stated that CERCLA operates independently of and in addition to RCRA and held that CHWA enforcement is not precluded by CERCLA. *Colorado v. U.S. Dept. of Army*, 707 F. Supp. 1562, 1567-70 (D. Colo. 1989). In 1993, the Tenth Circuit ruled that "[t]he Rocky Mountain Arsenal is a hazardous waste treatment, storage and disposal facility subject to RCRA regulation." *United States v. Colorado*, 990 F.2d 1565, 1569 (10th Cir. 1993), cert. denied 114 S. Ct. 922 (1994). "As a federal facility, the Arsenal is subject to regulation under RCRA. More importantly, because the United States Environmental Protection Agency ("EPA") has delegated RCRA authority to Colorado, the Arsenal is subject to regulation under CHWMA." *Id*. at 1576 (internal

13

citations omitted, emphasis added).  *See* Compl. ¶¶ 24, 29.  Shell is subject to both CERCLA and CHWA.

### C.  Shell's generalizations about CERCLA and RCRA and its cite to *Gwaltney v. Chesapeake Bay* wrongly limit the scope of CHWA operator liability.

To support its argument that it is liable only under CERCLA, Shell suggests that "CERCLA 'serves goals that are remedial and curative' whereas RCRA 'is preventative in nature.'" MTD at 12.  This general observation ignores the corrective action and post-closure provisions of CHWA, which ensure a closed facility remains protective throughout post-closure, as well as case law holding that CERCLA and CHWA operate independently and concurrently at the Arsenal.  *See* 6 Colo. Code Regs. § 1007-3:100.10; *United States v. Colorado*, 990 F.2d 1565.  CDPHE's independent CHWA authority and Shell's post-closure obligations under CHWA are precisely the questions at issue in this case.

Shell also cites to *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49 (1987) and its progeny for the premise that statutes framed in the present do not include the past.  MTD at 9-10.  However, this case is not on point and actually demonstrates how RCRA/CHWA can address past harms.  *Gwaltney* addressed how, in the absence of government enforcement, private citizens may commence civil actions against any person "alleged to be in violation of" a Clean Water Act permit.  *Id.* at 52.  The court distinguished private citizens and citizen suits from the government regulators, which "may bring enforcement actions to recover civil penalties for wholly past violations."  *Id.* at 58.  Here, CHWA authorizes CDPHE to enforce against any person who "is or has been" in violation, clearly allowing CDPHE to address wholly past violations.  Colo. Rev. Stat. § 25-15-308(2)(a) (2017).

14

**D. Shell implies, wrongly, that CHWA did not begin to apply until 1984. Similarly, Shell appears to imply, wrongly, that the 1984 CHWA authorization, which transferred authority from EPA to CDPHE, cut off its RCRA liability and limited CDPHE to pursuing post-1984 CHWA violations.**

Shell claims its disposal occurred "before CHWA was implemented," and therefore it "never was an operator within the meaning of CHWA." MTD at 2, 11. Shell appears to contend State authority began when CHWA "was implemented" in 1984. However, Colorado passed solid waste laws in 1973, hazardous waste laws in 1979, and then repealed and reenacted the hazardous waste laws into CHWA in 1981. Colo. Rev. Stat. Ann. T. 25, Art. 15 (West 2017). Additionally, under RCRA, owners and operators of land disposal units that received waste after July 26, 1982, or that certified closure after January 26, 1983, must obtain a post-closure permit unless all waste is removed. 40 C.F.R. § 270.1(c) (2017). This is why CDPHE alleges Shell was operating – including disposing waste – at the Arsenal when CHWA was enacted. See Compl. ¶¶ 12-16, 39.

Similarly, Shell appears to imply that the 1984 EPA authorization of CDPHE's hazardous waste program cut off its RCRA liability and limited CDPHE to pursuing post-1984 CHWA violations. However, when EPA authorized CDPHE to implement CHWA in lieu of RCRA in 1984, this transferred to the State "responsibility for permitting hazardous waste treatment, storage and disposal facilities within its borders" and "primary enforcement responsibility." Colorado; Final Authorization of State Hazardous Waste Management Program, 49 Fed. Reg. 41036-01 (Oct. 19, 1984) at 41037. *See also* Compl. ¶ 20. This transfer changed the responsibilities of CDPHE vis-à-vis EPA, but not the status or obligations of regulated entities or Shell's operator liability.

**E.  Shell's Exhibit shows it is "operating" the Arsenal under CHWA and demonstrates CHWA and CERCLA act together, not separately, at the Arsenal.**

Shell's Exhibit attached to its Motion demonstrates Shell participates in post-closure activities pursuant to CHWA.  The Exhibit is a "Basin F Post-Closure Plan" ("Plan"), dated 2011, prepared for the Rocky Mountain Arsenal Remediation Venture Office ("RVO").  Ex. to Shell MTD at 6.[3]  The RVO is a committee comprised of representatives from Shell and the Federal Defendants.  The Plan's stated purpose is to comply with CHWA and related State regulations regarding post-closure care of the former Basin F Surface Impoundment and former Basin F Wastepile.  *Id.* at 13-14.  The Plan is one of several post-closure plans for different areas of the Arsenal.  *Id.*  The Plan indicates that Defendants' compliance with CHWA's post-closure plan requirements will satisfy the CERCLA "operations and maintenance" requirements.  *Id* at17.  The Plan cross-references other monitoring and land use plans prepared by the RVO.  *Id.* at 40.

Shell offers the Plan as evidence that the Army is responsible for monitoring and maintenance at the Arsenal.  MTD at 3.  However, this allocation of responsibility to the Army was devised by the RVO parties themselves.  What the Plan truly shows is that Shell, a member of the RVO, participated in developing a plan for RCRA post-closure care, submitted the Plan to CDPHE (not the U.S. EPA, which oversees the CERCLA process), and did so pursuant to CHWA and Colorado Hazardous Waste Regulations.  The Plan belies Shell's attempts to characterize RCRA as only preventative and CERCLA as only remedial.  MTD at 12.  The Plan counters Shell's position that it only has "CERCLA-based obligations."  MTD at 11.  Most importantly, the Plan demonstrates Shell shares responsibility for and participates in environmental compliance and decision-making at the Arsenal with regards to CHWA.

---

[3] Exhibit citations reference the page number of the submitted PDF document, and not to the sections with the embedded reports and cover memoranda.

16

## VI.    THE CERCLA 121(e)(1) PERMIT WAIVER PROVISION DOES NOT APPLY TO CHWA POST-CLOSURE PERMIT REQUIREMENTS

Shell argues that CERCLA 121(e)(1) waives the requirement that it obtain a post-closure permit.  MTD at 17-18.  However, Shell's brief does not address the factors relevant to a motion to dismiss analysis, and instead argues it should prevail "as a matter of law."  MTD at 18.  Regardless, Shell's argument fails because the permit waiver provision Shell cites applies to response and remedial actions and does not waive the CHWA post-closure permit requirements CDPHE seeks to enforce in this case.  Additionally, Basin F was a regulated hazardous waste unit prior to the CERCLA action.  An entity cannot exempt itself from RCRA or CHWA by subsequently conducting a CERCLA action.

### A.    CDPHE has met its pleading burden and Shell makes legal arguments beyond the scope of a Rule 12(b)(6) motion.

Shell cites no legal authority in this section of its Motion for dismissing CDPHE's CHWA claim, and instead of citing to Rule 12(b)(6), Shell suggests it should prevail "as a matter of law."  MTD at 18.  Because, as discussed, CDPHE's Complaint alleges facts showing Shell is an operator of the Facility, the Court should deny Shell's Motion.  Should the Court decide to consider Shell's legal arguments, although CDPHE addresses some of these below, it requests the opportunity to fully brief this question before the Court rules.

### B.    CERCLA 121(e)(1) does not waive the post-closure permit requirement.

Turning to Shell's legal argument, the plain language of the permit waiver provisions of CERCLA 121(e)(1) concerns only the "removal or remedial action."  42 U.S.C. § 9621(e)(1).  This provision was meant to ensure the cleanup is "not [] delayed by time-consuming and duplicative administrative requirements."  National Oil and Hazardous Substances Pollution Contingency Plan, 55 Fed. Reg. 8666-01 (March 8, 1990) at 8756.  This waiver does not apply to

17

CHWA post-closure, because once the site is closed and the remedy is complete these timing and delay concerns no longer apply.  Here, as CDPHE alleged in its Complaint, the remedial action was finalized when Basin F was certified closed on August 24, 2010.  Compl. ¶ 33.  At this point, remediation ended and CHWA post-closure requirements began to apply.  *See e.g*. 6 Colo. Code Regs. § 1007-3:100.10(b); Compl. ¶ 35.  As properly pled in the Complaint, this is when CDPHE began working with Defendants to put a post-closure permit or equivalent document in place.  Compl. ¶ 35.

EPA's 1998 Closure/Post Closure Rule (10/22/98) supports this plain language reading of the CERCLA 121(e)(1) waiver.  As the Rule preamble states, prior to adoption of the Rule, facilities like the Arsenal that were cleaned up pursuant to CERCLA were required to apply for a RCRA post-closure permit after the CERCLA cleanup was complete:

> In [some] cases, Federal or State Superfund authorities have been used to address cleanup at sites. However, prior to this rule, EPA or the State was still required to issue a post-closure permit even where the environmental risks associated with the facility were addressed through other authorities.

Standards Applicable to Owners and Operators of Closed and Closing Hazardous Waste Management Facilities; Post-Closure Permit Requirement; Closure Process, 63 Fed. Reg. 56710-01 (Oct. 22, 1998) at 56713.  Hence, one purpose of the Rule was to soften the effect of this post-closure permit requirement and "allow post-closure care requirements to be imposed using either permits or approved alternate authorities."  *Id*.  Colorado adopted the Rule's provisions, allowing CDPHE the flexibility to accept CERCLA documents in lieu of issuing a post-closure permit.  6 Colo. Code Regs. § 1007-3:100.10(d).  None of this would have been necessary if Shell was correct that CERCLA 121(e)(1) categorically waives RCRA or CHWA post-closure permit requirements.

Finally, the United States District Court for the District of Colorado has addressed the

relationship between RCRA and CERCLA, the authorities of the federal government and the

states during cleanup of hazardous waste sites generally, and Colorado's and the United States'

authorities at the Arsenal specifically.  That Court discussed the distinction between CHWA

permits and the CERCLA 121(e)(1) waiver in the context of the Army's suggestion that CHWA

should not apply at the Arsenal:

> For example, the State's closure plan and monitoring requirements are effectuated
> through a state permit process. In contrast, CERCLA § 121(e)(1), [42 U.S.C. §
> 9621(e)(1) ], exempts CERCLA sites from having to acquire state or federal
> permits for remedial action conducted on site. Thus, the Army contends, the
> delays incurred in obtaining permits for RCRA enforcement would frustrate
> Congress's intent in enacting CERCLA as an effort to "speed up" the cleanup
> process.

*Colorado v. U.S. Dept. of Army*, 707 F. Supp. at 1568.  After analyzing the relevant laws, the

court disagreed with the Army's arguments.  Later, the Tenth Circuit Court of Appeals held that

the Arsenal – "one of the worst hazardous waste pollution sites in the country" – is subject to

both CHWA and CERCLA requirements.  *United States v. Colorado*, 990 F.2d 1565.

Respectfully submitted this 27th day of October, 2017.

CYNTHIA H. COFFMAN
Attorney General

*/s/David Banas*
DAVID BANAS*
Senior Assistant Attorney General
Ph: (720) 508-6284; Fax: (720) 508-6039
E-Mail:  david.banas@coag.gov
Colorado Department of Law
Natural Resources and Environment Section
1300 Broadway, 7th Floor
Denver, Colorado  80203
Attorneys for Colorado Department of Public
   Health and Environment
*Counsel of Record

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of October, 2017, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT SHELL OIL COMPANY'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David A. Carson
U.S. Department of Justice-Denver-ENRS
Environment & Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80212
303-844-1349
303-844-1350 (fax)
david.a.carson@usdoj.gov

Nessa Elise Horewitch Coppinger
Beveridge & Diamond, P.C.-DC
1350 I. Street, NW
Suite 700
Washington, DC 20005-3311
202-789-6053
202-789-6190 (fax)
ncoppinger@bdlaw.com

                                        /s/Laura F. Kelly
                                        LAURA F. KELLY
                                        Paralegal
                                        Colorado Department of Law
                                        Natural Resources and Environment Section
                                        Ralph L. Carr Colorado Judicial Center
                                        1300 Broadway, 7th Floor
                                        Denver, Colorado  80203
                                        Telephone:  (720) 508-6301
                                        FAX:  (720) 508-6039
                                        E-Mail:  laura.kelly@coag.gov