**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-02223-RM-SKC

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, HAZARDOUS
MATERIALS AND WASTE MANAGEMENT DIVISION,

     Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF THE ARMY,
UNITED STATES FISH AND WILDLIFE SERVICE, and
SHELL OIL COMPANY,

     Defendants.

---

## ORDER

---

     This case concerns hazardous waste at the Rocky Mountain Arsenal, which is federally-owned land.  Plaintiff's complaint alleges two claims implicating state and federal environmental laws.  The matter is before the Court on the *Recommendation of United States Magistrate Judge* (the "Recommendation") (ECF No. 42).  The Recommendation addresses two separate motions to dismiss—one by Defendant Shell Oil Company (ECF No. 12) and the other by the "Federal Defendants," which consists of the United States of America, United States Department of the Army, and the United States Fish and Wildlife Service (ECF No. 37).  The Recommendation concluded that each motion be granted in part and denied in part.  (ECF No. 42 at 37-38.)  Plaintiff, Shell, and Federal Defendants each filed objections to the Recommendation.  (ECF Nos. 45, 46, 47.)  Federal Defendants responded to Plaintiff's objections.  (ECF No. 48.)  Plaintiff responded to Federal Defendants' and Shell's objections.  (ECF Nos. 49, 50.)

For the reasons stated below, the Court SUSTAINS IN PART Plaintiff's objections, OVERRULES Shell's objections, OVERRULES IN PART and SUSTAINS IN PART Federal Defendants' objections, and AFFIRMS IN PART and REJECTS IN PART the Recommendation as provided herein. Shell's motion to dismiss is **denied** as to Plaintiff's first claim and **granted** as to Plaintiff's second claim. Federal Defendants' motion to dismiss is **denied** as to Plaintiff's first claim and **granted** as to Plaintiff's second claim as untimely to the extent it is based on failing to comply with the provisions of CERCLA 120(h) and otherwise as barred by sovereign immunity as to non-CERCLA bases.

## I.     LEGAL STANDARDS

### A.     Review of the Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." "[T]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

An objection is proper if it is filed timely in accordance with the Federal Rules of Civil Procedure and specific enough to enable the "district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear

error on the face of the record in order to accept the recommendation.").

**B.      Rule 12(b)(1) Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(1), the court tests whether it has subject matter jurisdiction to properly hear the case before it.  The party invoking the court's jurisdiction bears the burden to establish that federal jurisdiction exists, and "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions generally take two forms.  The first form is a facial attack that challenges the sufficiency of the complaint's allegations as to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  The court accepts the allegations in the complaint as true when reviewing a facial attack.  *Id.*

The second form is a factual attack that goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based.  *Id.* at 1003.  Unlike a facial attack, the court does not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack.  *Id.*  "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citation omitted).  And "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion[,]" unless the jurisdictional issue is intertwined with the merits of a plaintiff's case.  *Id.*  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

**C.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

The purpose of a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts … to provide 'plausible grounds that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context "must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (internal quotation marks and citation omitted). The "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*. This requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, [but also to] provide fair notice to defendants of the actual grounds of the claim against them." *Id*. at 1248; *accord Twombly*, 550 U.S. at 582.

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## II.    FACTUAL AND PROCEDURAL HISTORY

The parties do not object to the factual or procedural background discussed in the Recommendation.  Accordingly, the Court adopts and incorporates the factual and procedural background included within the Recommendation as if set forth herein.  To put the Court's analysis in context, a brief overview follows.

The Rocky Mountain Arsenal is a hazardous waste treatment, storage, and disposal facility located near Commerce City, Colorado.  The United States government has owned the facility since 1942 with the Army operating it from that time until the mid-1980's.  Being one of the nation's most contaminated sites, a CERCLA interim response action was initiated in 1988 to remediate the contamination.  Basin F of the facility was certified closed on August 24, 2010.  Plaintiff's claims are twofold: (1) that defendants have failed to obtain a post-closure permit (or substitute document) as required by 6 Colo. Code Regs. § 1007-3:100.10—the Colorado Hazardous Waste Act ("CHWA"); and (2) that defendants transferred a parcel of Arsenal land outside the federal government (to Commerce City, Colorado) in violation of various agreements and laws.  Plaintiff's second claim relies on the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), an On-Post Record of Decision ("ROD") pursuant to CERCLA, and Colorado Executive Order D-013-98.

Shell moves to dismiss Plaintiff's complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  First, Shell argues that the Court lacks subject matter jurisdiction.  (ECF No. 12-1 at 7-9.)  Next, Shell contends that Plaintiff's second claim for the transfer of land should be dismissed because it never owned any portion of the Arsenal.  (*Id.* at 9.)  With regard to the first claim, Shell argues that it is not an "operator" of the Arsenal and, therefore, has no obligation to obtain a post-closure permit as Plaintiff alleges.  (*Id.* at 10-18.)  Finally, Shell argues that

imposing any permit requirement on it conflicts with CERCLA's permit waiver provision.  (*Id.* at 19-20.)

Federal Defendants separately move to dismiss Plaintiff's complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Federal Defendants maintain that both of Plaintiff's claims are barred by the applicable statute of limitations—claim one by Colo. Rev. Stat. § 25-15-308(4)(a) and claim two by 28 U.S.C. § 2401(a)—Federal Defendants argue that Section 2401(a) also poses a jurisdictional bar.  (ECF No. 37 at 7-8, 17-19.)  As to the first claim, Federal Defendants also insist that the United States (as a whole—distinct from its departments and agencies) is entitled to sovereign immunity and that CERCLA's permit waiver provision bars the claim.  (*Id.* at 8-16.)  According to Federal Defendants, claim two must also be dismissed because the United States is entitled to sovereign immunity (together with its departments and agencies) and because CERCLA § 121(e)(2) does not provide for injunctive relief.  (*Id.* at 19-20.)

Both motions were referred to the magistrate judge.  (ECF Nos. 20, 37.)  A hearing on the motions was held on December 15, 2017.  (ECF No. 39.)  Supplemental briefing was filed before the hearing.  (ECF Nos. 26, 27.)  On March 5, 2018, the magistrate judge issued a Recommendation that each motion be denied in part and granted in part.[1]  (ECF No. 42.)  Plaintiff, Federal Defendants, and Shell filed objections to the Recommendation.  (ECF Nos. 45, 46, 47.)[2]

---

[1]  Magistrate Judge Michael E. Hegarty presided at the hearing and issued the Recommendation.  However, this action was subsequently reassigned to Magistrate Judge S. Kato Crews on August 6, 2018.  (ECF No. 51.)

[2]  Federal Defendants also filed supplemental authorities on November 19, 2018, which the Court has reviewed and considered.  (ECF No. 52.)

The Recommendation advised that the claims, in some permutation of defendants and claims, should go forward. As should always be the case, the parties filed focused objections to some—but not all—findings and conclusions of the magistrate judge. Rather than set forth the magistrate judge's Recommendation as to all matters and how each objection implicates (if at all) the overall recommendations, the Court concludes that the magistrate judge's analysis was thorough and sound, and that there is no clear error on the face of the record with regard to portions of the Recommendation to which neither party objected. *See* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also Summers*, 927 F.2d at 1167. And having so said, the Court proceeds directly to the objections.

## III.    SHELL'S OBJECTIONS

### A.    Does the complaint allege that Shell is an "operator?"

"Operators" of hazardous waste management units must have permits during the closure period of a unit. 6 Colo. Code Regs. § 1007-3:100.10. The Recommendation concludes that Plaintiff states a cognizable claim against Shell as an operator of the Arsenal because the complaint alleges that Shell "makes decisions regarding funding of the CERCLA remedy and participates in environmental compliance decisions[.]" (ECF No. 42 at 10-13.) Shell's objection contends that the Recommendation erred: (1) by disregarding CHWA's use of the present tense of the word operator; (2) by "failing to engage" with caselaw cited in its brief; and (3) by making "unsupported factual findings regarding Shell's activities at the Arsenal." (ECF No. 47 at 3-6.) Plaintiff responds that the Recommendation correctly concludes Shell is an operator under controlling law. (ECF No. 49 at 3-4.) The Court agrees with the Recommendation.

Plaintiff alleges that "Shell makes environmental compliance decisions concerning ongoing funding of the [CERCLA] remedy and participates in decisions regarding the Facility's compliance with environmental regulations." (ECF No. 1 at ¶ 39.) CHWA's definition of operator does not answer the question at hand: "'Operator' means the person operating a hazardous waste management facility or site either by contract or permit." Colo. Rev. Stat. § 25-15-101. The Court finds the analysis of CERCLA's "operator" definition helpful. Just like CHWA's tautological definition, the Supreme Court "rue[d] the uselessness of CERCLA's definition of a facility's 'operator' as 'any person . . . operating' the facility[.]" *United States v. Bestfoods*, 524 U.S. 51, 66 (1998). In an attempt to give the term its ordinary and natural reading, the *Bestfoods* court defined operator as "someone who directs the workings of, manages, or conducts the affairs of a facility." *Id.* "To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id.* at 66-67.

First, Shell's plain-language/present-tense argument is rejected. Plaintiff's allegations are in the present tense—e.g., Shell *makes* environmental compliance decisions and *participates* in decisions regarding the compliance with environmental regulations. (ECF No. 1 at ¶ 39.) Although the allegations can be read to mean that Shell currently makes environmental compliance decisions based on obligations imposed by a past CERCLA remedy, that only explains how Shell came to make current (i.e., present) environmental compliance decisions. But the critical allegation remains, which is that Shell "makes decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 67. Shell cites no authority to the contrary.

Second, the Recommendation does not disregard Shell's cited caselaw. The Recommendation discussed, but rejected, Shell's reliance on *United States v. Friedland*, 173 F. Supp. 2d 1077 (D. Colo. 2001). (ECF No. 42 at 12.) The Court also notes that *Friedland* analyzed *evidence* presented on the issue of direct liability in ruling on a motion for summary judgment. *Friedland*, 173 F. Supp. 2d at 1098. This case is at the pleading stage, not summary judgment—thus, *Friedland* does not help Shell for that additional reason.

Shell's final argument relates to a "factual gap" in the complaint. (ECF No. 47 at 5-6.) Specifically, Shell asserts that the complaint does not "allege that Shell makes decisions specific to Basin F." (*Id.*) Shell is technically correct; however, the complaint alleges that Shell is an operator of "the Facility," which includes Basin F. (ECF No. 1 at ¶¶ 8, 15, 16, 39.) "[W]e accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). If Shell makes environmental compliance decisions regarding the whole Facility, it is reasonable to infer that such decisions also impact Basin F, which is part of the larger Facility. Accordingly, Shell's first objection is overruled.

### B. Does CERCLA's permit waiver preclude Plaintiff's first claim that Shell is required to obtain a post-closure permit?

CERCLA provides that "[n]o Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with [§ 9621]." 42 U.S.C. § 9621(e)(1). But CERCLA's "savings provision" provides that "[n]othing in [CERCLA] shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d). Similarly, CERCLA's provision entitled "relationship to

other laws" provides that "[n]othing in [CERCLA] shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State."  42 U.S.C. § 9614(a).

The Recommendation concludes that "the CERCLA permit waiver does not preempt permitting requirements for units that are being regulated under RCRA/CHWA at the time the CERCLA action commences."  (ECF No. 42 at 14.)  And because Plaintiff alleges that it regulated hazardous waste units under RCRA[3] before the initiation of the CERCLA action, CERCLA's permit waiver does not apply.  (*Id*. at 16-17.)  Shell's objection proceeds as follows: "(1) the State is seeking for Shell to obtain a State permit; (2) the permit is being sought for [CERCLA] remedial action conducted entirely onsite; and (3) the CHWA post-closure permit addresses work already being carried out as part of the CERCLA remedy."  (ECF No. 47 at 7; ECF No. 26 at 3.)  Plaintiff counters that the Recommendation correctly interprets CERCLA's permit waiver consistently with its savings provisions, which means that Plaintiff's claim is not precluded.  (ECF No. 49 at 7-10.)

First, Shell simply repeats arguments that have been fully considered, properly analyzed, and rejected by the magistrate judge.  (*Compare* ECF No. 26 *with* ECF No. 42 at 13-17.)  Other than reiterating its position and disagreeing with the Recommendation, Shell cites no legal authority to support its objection.  After reviewing the briefs, Recommendation, and objection, the Court finds no reason to depart from the Recommendation's conclusions.

---

[3]  Congress enacted the Resource Conservation and Recovery Act ("RCRA") "to assist the cities, counties and states in the solution of the discarded materials problem and to provide nationwide protection against the dangers of improper hazardous waste disposal."  H.R.Rep. No. 1491, 94th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6238, 6249.  Once the EPA authorizes a state to carry out the state hazardous waste program (CHWA in this case) in lieu of RCRA, "[a]ny action taken by [the] State [has] the same force and effect as action taken by the [EPA under RCRA.]"  42 U.S.C. § 6926(d).

Moreover, Tenth Circuit caselaw does not support Shell's reading of the interplay between CERCLA and the State's authority under CHWA. In *United States v. State of Colorado*, 990 F.2d 1565 (10th Cir. 1993), the Circuit found that "the Arsenal is subject to regulation under RCRA [and, m]ore importantly, because the EPA has delegated RCRA authority to Colorado, the Arsenal is subject to regulation under [CHWA.]" *Id.* at 1576. More specifically, the court stated that "Colorado has authority to enforce [CHWA] at the Arsenal, and '[a]ny action taken by [Colorado] . . . [has] the same force and effect as action taken by the [EPA.]" *Id.* (citation omitted). Although the *State of Colorado* court acknowledged a potential conflict between CERCLA's permit waiver and the act's savings provisions, in this case, the Court agrees with the Recommendation's analysis and conclusion that "the permit waiver does not apply to hazardous waste units that were regulated under RCRA/CHWA prior to CERCLA." (ECF No. 42 at 13-17.) The Court finds Shell's attempt to distinguish *State of Colorado* unpersuasive—that "the Tenth Circuit at no time held or even suggested that Shell had a permit obligation at Basin F." (ECF No. 47 at 9-10.) Such a holding (or suggestion) would not be expected because Shell was not named as a party in that case. At this juncture, the issue is whether Plaintiff has alleged a sufficient basis for its authority to require and enforce a permit obligation under CHWA, not whether Shell previously had a permit obligation at Basin F. And Shell again provides no legal authority to the contrary. Accordingly, this objection is overruled.

## IV.    PLAINTIFF'S OBJECTIONS

### A.    Is Plaintiff's first claim barred by Colo. Rev. Stat. § 25-15-308(4)(a)'s two-year statute of limitations?

The post-closure permit requirement states that "[o]wners and operators of surface impoundments, landfills, land treatment units, and waste pile units [] that certified closure [] after January 26, 1983, must have post-closure permits[.]" 6 Colo. Code Regs. § 1007-3:100.10. The

applicable statute of limitations states: "Any action pursuant to this part 3 shall commence within two years after the date upon which the department discovers an alleged violation of this part 3 or within five years after the date upon which the alleged violation occurred, whichever date occurs earlier[.]" Colo. Rev. Stat. § 25-15-308 (4)(a).

In analyzing the foregoing statute of limitations, the Recommendation concludes that the "failure to obtain a post-closure permit is a single, continuing violation." (ECF No. 42 at 25.) And "[b]ecause the failure to obtain a post-closure permit can be discovered only once, the two-year limitations period begins to run when [Plaintiff] first discovers the failure to obtain a post-closure permit, regardless of the fact that the violation is continuing." (*Id.* at 26.) But the Recommendation did not find that the claim was time-barred because the statute of limitations defense did not appear on the face of Plaintiff's complaint. (*Id.*) Thus, it advised that should the defendants "present undisputed evidence after discovery indicating that [Plaintiff] knew of the alleged violation before 2015, [defendants] may be entitled to summary judgment on their statute of limitations defense." (*Id.*) Plaintiff agrees that the failure to obtain a post-closure permit constitutes a continuing violation, but disagrees that the statute of limitations period begins to accrue from the date the permit violation was first discovered—in other words, the limitations period begins anew each day that defendants fail to obtain the required permit. (ECF No. 45 at 4-5.) Defendants contend that the two-year limitations period in Section 25-15-308(4)(a) begins to run on the date that Plaintiff discovers the violation, which can only happen once, meaning the limitations period does not begin anew each day. (ECF No. 48 at 3.)

First, under either reading of the statute of limitations, Federal Defendants' motion to dismiss must be denied because the statute of limitations defense is not apparent on the face of the complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008). And no party has

objected to the magistrate judge's finding in this regard. Accordingly, Plaintiff's objection as to a specific legal interpretation of this statute of limitations is essentially moot. Nonetheless, because the matter will—as contemplated in the Recommendation—again arise in later proceedings, the Court discusses portions of the parties' differing interpretations below.

The *failure to* obtain a permit is not clearly a single, continuing violation with but one accrual point in time. The nature of Plaintiff's first claim is important in analyzing this issue. Plaintiff seeks an injunction compelling defendants to "[s]ubmit an application for a post-closure permit as required by [CHWA.]" (ECF No. 1 at Prayer, ¶ 1(a).) Plaintiff does not challenge anything that Federal Defendants did in 2010 or 2011—the injunctive relief does not seek to prohibit or abate a discrete past action. Instead, Plaintiff challenges what Federal Defendants have failed to do: obtain a permit or other enforceable document. No party argues that the obligation to obtain a post-closure permit does not continue to this day. Nor is it disputed that the obligation to obtain that permit first arose in 2010 or 2011. But the arising of an *obligation* is not synonymous with the accrual of a *claim*.

The relevant statute of limitations runs from "the date upon which the department discovers an alleged violation of this part 3 or within five years after the date upon which the alleged violation occurred, whichever date occurs earlier[.]" Colo. Rev. Stat. § 25-15-308 (4)(a). According to the Recommendation and Federal Defendants, the failure to apply for a post-closure permit can be discovered only once, meaning Section 25-15-308(4)(a) begins to run when Plaintiff first discovers the violation. (ECF No. 42 at 25-26; ECF No. 48 at 4.)

The Recommendation cites *Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666 (10th Cir. 2016) to conclude that the two-year statute of limitations in Section 25-15-308(4)(a) begins to run when Plaintiff *first* discovers the violation. But the statute at issue in *Sierra Club*

uses critically different language than Section 25-15-308(4)(a). There, the Circuit analyzed 29 U.S.C. § 2462, which requires any action for failure to obtain a mandatory pre-construction permit to be brought "within five years from the date when the claim **first accrued**." *Id.* at 671 (emphasis added). By contrast, Section 25-15-308 begins to run when the department **discovers a violation**.

The challenge in this case emanates from trying to locate a discrete violation at a particular point in time—there is none. As noted in *Sierra Club*, to be considered a single violation, "[t]he violation **must involve some affirmative conduct** within the limitations period and not merely the abatable but unabated inertial consequences of some pre-limitations action." *Sierra Club*, 816 F.3d at 672 (citation and quotation omitted; emphasis added). And in *Sierra Club*, the affirmative act of constructing or modifying a facility without the required permit constituted a violation of the Clean Air Act. *Id.* at 672. Because that case involved an identifiable, affirmative act—modifying the facility without a permit on a certain date—the Circuit characterized the situation as a single, continuing violation. *Id.* And more importantly, the statute of limitations specified that it began to run when the claim *first accrued*. As such, the plaintiff could have brought suit on the first day the facility was modified without a permit—in other words, the claim first accrued on day one of unpermitted construction. Therefore, the statute of limitations expired five years after the defendant's affirmative act of modifying its facility without a permit. *Id.* at 672.

This case is different. Plaintiff's claim alleges a failure to act. Because the Federal Defendants failed to take required action, there is no way to identify a discrete act at a specific point in time. The post-closure permit requirement states that "[o]wners and operators of surface impoundments, landfills, land treatment units, and waste pile units [] that certified closure [] after

January 26, 1983, must have post-closure permits[.]" 6 Colo. Code Regs. § 1007-3:100.10. Thus, the permit obligation arose upon the closure of Basin F. But the Regulation does not specify any deadline or timeline for obtaining such a post-closure permit—only that one is required. That means the requirement to obtain a permit imposes a continuing obligation. But the imposition of an ongoing obligation does not answer the statute of limitations accrual question.

If the issue in this case were when Plaintiff's cause of action under § 1007-3:100.10 *first accrued*, it may be that the statute of limitations began running upon closure of Basin F. But what is at issue is the absence of any action to obtain the required permit. The Regulation compels an owner or operator to obtain such a permit—that obligation continues to exist until the required permit or substitute documents are obtained. Stated differently, the violation is ongoing every day that Basin F is in post-closure status without the required permit. Accordingly, Section 25-15-308 arguably may not expire as long as the abatable but unabated violation continues. To be clear, the Court reads Plaintiff's claim as seeking relief for the ongoing and current violation. For example, if Plaintiff were suing to enjoin the Federal Defendants' failure to obtain the required permit *in 2011*, and the facts established that Plaintiff had discovered the violation *in 2011*, such a claim would present a different question which is not before the Court. Plaintiff does not seek to reach back in time beyond the applicable two-year statute. Ultimately, the Court advises the parties that it will consider subsequent limitations arguments *de novo*, without concluding that legal determinations as to the interpretation of the two-year statute of

limitations is law of the case.[4]  To the extent that the Recommendation is being interpreted as establishing law of the case on this issue, the objection is sustained.

### B. Has the United States of America waived sovereign immunity for RCRA claims?

The Recommendation finds that the United States has not waived sovereign immunity as to Plaintiff's claims under RCRA/CHWA and CERCLA.  (ECF No. 42 at 17-20; 31-33.) Plaintiff protests that the Recommendation erred in both regards.  (ECF No. 45 at 8-14.)  The Federal Defendants agree with the Recommendation.  (ECF No. 49 at 10-19.)  The Court addresses sovereign immunity under Plaintiff's RCRA/CHWA claim and then CERCLA.

Based on the text of the statute and Tenth Circuit precedent, the Court concludes that the United States *has waived* sovereign immunity for Plaintiff's RCRA/CHWA claim.  RCRA's sovereign immunity waiver states, in part:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines, regardless of whether such penalties or fines are punitive or coercive in nature or are imposed for isolated, intermittent, or continuing violations. **The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge)**. . . .

---

[4]  The Court is mindful of Plaintiff's interpretation that no claim accrued until the State Director requested a permit. That matter can await further proceedings and resolution of any objection to such an argument is not required at this time.

42 U.S.C. § 6961 (emphasis added).

The Court reads the statute differently than the Recommendation. The first sentence of Section 6961 mandates that each department, agency, and instrumentality of the Federal Government "shall be subject to, and comply with" all State and local permitting requirements. Thus, it imposes obligations on those specified arms of the Federal Government. Reading on, the "United States" then "expressly waives any immunity . . . with respect to any such substantive or procedural requirement[.]" Reading the provisions together, the statute expressly waives sovereign immunity as to the "United States" as a whole while specifying that the Federal Government and its agencies must comply "with, all Federal, State, interstate, and local requirements, both substantive and procedural[.]" Several things support the Court's conclusion.

For one, the statute uses different words—department, agency, and instrumentality of the Federal Government when discussing obligations to comply with State and local permit requirements; but the United States (as a whole) when waiving sovereign immunity. To equate United States with department, agency, and instrumentality of the Federal Government, would not give effect to every clause and word of the statute. *Moskal v. United States*, 498 U.S. 103, 109 (1990) (internal quotations and citations omitted) ("[A] court should give effect, if possible, to every clause and word of a statute.") As an analogy, it makes little sense that Congress would waive immunity as to every piece of a pie, but not the whole pie. Instead, it appears to this Court that Congress waived immunity as to the whole pie, while specifying permit compliance obligations on each of its component pieces.

Moreover, the Tenth Circuit has interpreted Section 6961(a) in a similar way. In *Colorado Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 693 F.3d 1214 (10th Cir. 2012), the Circuit stated that "the federal government and its

agencies must comply with an EPA authorized state program regulating hazardous waste, such as Colorado's, to the same extent, as any person[.]" *Id.* at 1217. "The United States has thus waived its sovereign immunity from state-imposed permit requirements, as well as conditions imposed by the state for the storage, treatment and disposal of hazardous waste." *Id.* Even if the foregoing is *dicta*, as the Recommendation and Federal Defendants contend, the Court finds the Tenth Circuit's reading persuasive. Therefore, Plaintiff's objection is sustained.

### C. Has the United States waived sovereign immunity for Plaintiff's CERCLA claim?

The Recommendation concludes that CERCLA only allows an illegal transfer of property claim against departments, agencies, and instrumentalities of the United States, but not directly against the United States. (ECF No. 42 at 31-32.) Plaintiff principally relies on *Chevron Mining Inc. v. United States*, 863 F.3d 1261 (10th Cir. 2017) in objecting to the Recommendation. (ECF No. 45 at 8-11.) The Federal Defendants disagree with Plaintiff and argue that CERCLA waives immunity of the United States for response costs under Section 9607, but not for property transfers under Section 9620(h) as alleged in this case. (ECF No. 48 at 16-19.)

In *Chevron Mining*, the Tenth Circuit acknowledged that under Section 9620 "[t]he United States . . . shall be subject to, and comply with, **this chapter** in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." *Chevron Mining*, 863 F.3d at 1274 (citing 42 U.S.C. § 9620(a)(1)) (emphasis added). The Circuit went on to conclude that the United States was liable as an owner when reading Section 9607(a) in conjunction with 9620(a). *Id.* at 1278.

A similar result is warranted here with respect to Plaintiff's property transfer claim. First, as in *Chevron Mining*, the text of Section 9620 obligates the United States to comply with the substantive and procedural rules in the chapter—Plaintiff's claim is based on Section 9620(h),

which is part of that same chapter. And 9620(h)(3)(A) specifies the contents that must be included in certain deeds: "in the case of any real property **owned by the United States** on which any hazardous substance was stored for one year or more . . . each deed entered into for the transfer of such property by the United States to any other person or entity shall contain. . . ." 42 U.S.C. § 9620 (h)(3)(A) (emphasis added). Therefore, the Court sustains Plaintiff's objection on this basis and concludes that Plaintiff may assert a claim against the United States for the alleged deficiencies in relation to the property transfer.[5]

## V.     FEDERAL DEFENDANTS' OBJECTIONS

### A.     Two-Year Statute of Limitations—Colo. Rev. Stat. Section 25-15-308(4)(a)

Federal Defendants, like Plaintiffs, object to portions of the Recommendation's analysis and conclusions concerning Section 25-15-308(4)(a)'s two-year statute of limitations. (ECF No. 46 at 2-6.) The Court has addressed the parties' arguments in Section IV.A above.

### B.     CERCLA Permit Waiver

Federal Defendants first "object to certain factual findings or interpretations of the Complaint concerning the Army's compliance with RCRA and CHWA at the Rocky Mountain Arsenal[.]" (ECF No. 46 at 6-7.) Federal Defendants request that the Court "not adopt the Recommendation's findings with respect to disavowed allegations regarding the landfills and vague allegations regarding unidentified SWMUs that do not require post-closure permits." (*Id.* at 9.) Plaintiff responds that it has "adequately plead that State law and regulations require Defendants to obtain a post-closure permit for Basin F." (ECF No. 50 at 7-8 (citing Compl. at ¶¶ 34, 43, 45, 47).)

---

[5] As discussed below, this finding does not mean the claim is timely.

Federal Defendants' objection is not specific enough to enable the Court to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute. *One Parcel of Real Property*, 73 F.3d at 1059. Although Federal Defendants recite the plausibility pleading standard and argue that Paragraphs 43 and 44 of the complaint are not "tied together," no authority is cited to support its reading of the complaint. Nonetheless, Paragraph 43 of Plaintiff's complaint expressly identifies at least four locations "where hazardous waste or hazardous constituents remain in place or have been disposed of are being operated by Army and/or USFWS[.]" Thus, it is reasonable to infer that the failure to obtain post-closure permits alleged in Paragraph 44 refers to the locations identified in the immediately preceding paragraph.

Federal Defendants' remaining arguments take issue with whether CERCLA's permit waiver applies to units that were regulated under RCRA/CHWA prior to CERCLA. (ECF No. 46 at 10-12.) The Court has rejected such position above at Section III.B and agrees with the Recommendation that "the permit waiver does not apply to hazardous waste units that were regulated under RCRA/CHWA prior to CERCLA." (ECF No. 42 at 13-17.) Therefore, this objection is overruled.

## C. Claim 1 Against FWS

Federal Defendants again argue that Paragraphs 43 and 44 of the complaint are not "tied together"—this time, however, they conclude that the failure requires dismissal of the FWS as to the first claim. (ECF No. 46 at 13-17.) The Court disagrees for the reasons stated above and because Plaintiff's complaint alleges that the FWS manages portions of the Facility. (ECF No. 1, Compl. ¶ 41.); *Bestfoods*, 524 U.S. at 66 (stating that an operator is "someone who directs the workings of, **manages**, or conducts the affairs of a facility.") (emphasis added). Therefore, this objection is overruled.

**D.        Six-Year Statute of Limitations—28 U.S.C. § 2401**

The Recommendation concludes that the six-year statute of limitations in 28 U.S.C. §

2401(a) does not bar Plaintiff's claims against the United States "as a matter of law based on the

evidence before it that [Plaintiff] knew or should have known of the allegedly illegal transfer

prior to September 14, 2011."  (ECF No. 42 at 35.)  According to Federal Defendants, Section

2401(a) bars a claim six years after it *first accrues*, not six years after Plaintiff *knew or should*

*have known about* the illegal property transfer.  (ECF No. 46 at 17-20.)  Plaintiff responds that

the Recommendation correctly finds the statute of limitations began to run only when Plaintiff

knew or should have known of the land transfer and failure to comply with CERCLA § 120(h).

(ECF No. 50 at 11-14.)  And because there are questions of fact concerning when Plaintiff knew

or should have known about the land transfer and alleged CERCLA violation, the claims are not

untimely based on the pleadings or supporting affidavits.  (*Id.*)  The Court agrees with Federal

Defendants.

The Recommendation hinges on the contention that Plaintiff's claim accrues when

Plaintiff *knew or should have known* of the allegedly illegal transfer.  But the statute states that

"every civil action commenced against the United States shall be barred unless the complaint is

filed within six years after the right of action **first accrues.**"  28 U.S.C. § 2401(a) (emphasis

added).  This language is nearly identical to the statutory language analyzed in *Sierra Club*,

which has been discussed above.  There, the Circuit analyzed 29 U.S.C. § 2462, which requires

any action for failure to obtain a pre-construction permit to be brought "within five years from

the date when the claim **first accrued**."  *Id.* at 671 (emphasis added).  As in *Sierra Club*, claims

subject to 28 U.S.C. § 2401(a) begin to run when the claim *first* accrues, not when Plaintiff knew

or should have known about it.

Here, the complaint alleges that Federal Defendants did not comply with CERCLA 120(h) when property was transferred "from the federal government to Commerce City, Colorado on August 20, 2007." (ECF No. 1, Compl. at ¶¶ 52, 54.) Plaintiff had an actionable claim against the Federal Defendants as soon as the land was transferred on August 20, 2007. And there is no allegation that Plaintiff was prevented from discovering, within six years, that it had an actionable claim for the allegedly improper property transfer. Because Section 2401(a) requires that suit be filed within six years of when the right of action *first accrues*, and Plaintiff filed suit more than six years after that date, its claim is now time-barred to the extent it is based on failing to comply with the provisions of CERCLA 120(h).[6] Therefore, Federal Defendants' objection on this ground is sustained.

## VI.  CONCLUSION

Based on the foregoing and a *de novo* review of the portions of the Recommendation to which the parties properly objected, the Court:

(1)  SUSTAINS IN PART Plaintiff's objections to the Recommendation as provided herein (ECF No. 45);

(2)  OVERRULES IN PART and SUSTAINS IN PART Federal Defendants' objections to the Recommendation as provided herein (ECF No. 46);

(3)  OVERRULES Shells' objections to the Recommendation (ECF No. 47);

(4)  ADOPTS and REJECTS the Recommendation as provided herein (ECF No. 42);

(5)  DENIES Shell's motion to dismiss as to Plaintiff's first claim and GRANTS Shell's motion to dismiss as to Plaintiff's second claim (ECF No. 12); and

---

[6]  The Court adopts the magistrate judge's analysis as it pertains to the Colorado Executive Order and Joint Policy at issue in Claim 2. (ECF No. 42 at 31-33.)

(6)     DENIES Federal Defendants' motion to dismiss Plaintiff's first claim and

GRANTS Federal Defendants' motion to dismiss Plaintiff's second claim as untimely pursuant

to 28 U.S.C. § 2401(a) to the extent it is based on failing to comply with the provisions of

CERCLA 120(h) and otherwise as barred by sovereign immunity as to non-CERCLA bases.

IT IS SO ORDERED.

DATED this 13th day of March, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge